UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CHERI TALAMO | CIVIL ACTION |
| | NO. 17-3509 |
| VERSUS | |
| | SECTION M (2) |
| FRESENIUS MEDICAL CARE HOLDINGS, INC., *et al.* | |

## **ORDER & REASONS**

Before the Court is a motion for partial judgment on the pleadings filed by defendants Fresenius Medical Care Holdings, Inc., Spectra Laboratories, Inc., Bio-Medical Applications of Maryland, Inc., Bio-Medical Applications of Louisiana LLC, Fresenius Medical Care Louisiana Dialysis Group LLC, Renal Care Group, Inc., Bio-Medical Applications of Louisiana, Inc. ("Corporate Defendants"), and Melissa Lapworth, Heather Clark, and Nancy Landrieu ("Individual Defendants") (collectively, "Defendants"),[1] to which relator Cheri Talamo ("Talamo") responds in opposition,[2] and in further support of which Defendants reply.[3] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

**I.  BACKGROUND**

This *qui tam* relator action arises out of Talamo's employment as a registered nurse to provide self-care home peritoneal dialysis, a type of renal dialysis that treats end stage renal disease covered by Medicare and other government healthcare programs under 42 U.S.C. § 1395rr(b)(14)(B).[4] Renal dialysis is an artificial process that replaces a failing kidney's function, including extracting waste from blood, balancing body fluids, and forming urine. Generally, renal

---

[1] R. Doc. 56.
[2] R. Doc. 57.
[3] R. Doc. 62.
[4] R. Doc. 33 at 6-7, 9, 12.

1

dialysis is adequate if it achieves nearly the same level of function as a natural kidney. The measurement of dialysis adequacy is represented as a value of "Kt/V."[5] Low levels of the Kt/V measurement are dangerous to a patient's health.

Congress enacted the end stage renal disease program in 42 U.S.C. § 1395rr to provide Medicare coverage for renal dialysis services. Subsection (h) creates financial incentives for such providers to deliver quality services. The Secretary of the Department of Health and Human Services ("HHS") monitors the quality of renal dialysis services of each provider to determine a total performance score. If a provider does not meet or exceed a set score, its Medicare payments may be reduced by up to 2.0%. Further, HHS established a standard of 1.70 Kt/V as the level for adequate renal dialysis. In order to receive Medicare reimbursement, a provider must submit a claim reporting its patients' Kt/V levels.[6]

Talamo alleges that the Corporate Defendants (Fresenius Medical Care Holdings, Inc., and its subsidiaries)[7] offered peritoneal dialysis in a patient's home, which was administered by a nurse, such as Talamo, trained to use the dialysis equipment properly. A machine inserts a dialysate solution into a port surgically implanted in a patient's body. Waste products produced from the dialysis process called peritoneal dialysate then collect in ultrafiltration bags. The

---

[5] The National Institute of Diabetes and Digestive and Kidney Diseases explains the Kt/V measurement this way:

> Kt/V is another way of measuring dialysis adequacy. In this measurement,
> - K stands for the dialyzer clearance, the rate at which blood passes through the dialyzer, expressed in milliliters per minute (mL/min)
> - t stands for time
> - Kt, the top part of the fraction, is clearance multiplied by time, representing the volume of fluid completely cleared of urea during a single treatment
> - V, the bottom part of the fraction, is the volume of water a patient's body contains

*Hemodialysis Dose & Adequacy*, NAT'L INSTITUTE OF DIABETES & DIGESTIVE & KIDNEY DISEASES, https://www.niddk.nih.gov/health-information/kidney-disease/kidney-failure/hemodialysis/dose-adequacy (last visited May 28, 2019).

[6] *See* R. Doc. 33 at 7-8.

[7] R. Doc. 56-1 at 5.

2

machine monitors the volume of peritoneal dialysate expelled and adjusts the volume of dialysate solution allowed into the body through an "IQ drive," a thumb drive which controls the number and volume of "fills" each night the machine runs. Patients purchase the dialysate solution from Corporate Defendants, which are paid by reimbursement from Medicare and other governmental healthcare agencies.[8]

Peritoneal-dialysis patients periodically come into the Corporate Defendants' facility in Metairie, Louisiana, to receive a check-up. Every three months, a patient provides nurses, such as Talamo, with urine collected in the past 24 hours and the previous night's bags of peritoneal dialysate. Using scales and rulers, the nurses take several measurements, including the patient's weight, height, urine volume, and infiltration-bag weight. They write down the results and enter them in the Corporate Defendants' computer system, which calculates the Kt/V adequacy measurement. The Corporate Defendants then submit this information to governmental health agencies and insurance companies to receive reimbursement. This information is also used by the patients' physicians to make decisions about patient care, such as adjusting the volume of solution or removing a patient from home dialysis.

Talamo alleges that the Individual Defendants were employees of Corporate Defendants and were Talamo's supervisors. Melissa Lapworth, who oversaw a group of nurses that provided at-home dialysis service and also performed these services herself, was Talamo's immediate supervisor. Lapworth's immediate supervisor, in turn, was Heather Clark, and Clark's supervisor was Nancy Landrieu.[9]

---

[8] R. Doc. 33 at 9-10.
[9] *Id.* at 6, 11-12. The Defendants say that Talamo and the Individual Defendants are all employees of defendant Bio-Medical Applications of Louisiana, LLC d/b/a Fresenius Medical Care Crescent City Home Program. R. Doc. 56-1 at 2-3.

Talamo alleges that she witnessed her supervisor Lapworth knowingly entering false information into the computer system to maximize the payments received from Medicare. Talamo lists eleven incidents of fraudulent activity, including, for example, several occasions where Lapworth adjusted patients' time and volume settings on the computer system inconsistent with their doctors' orders or IQ drive output, causing patients to use and order additional and medically unnecessary bags of dialysate solution. On some occasions, patients died shortly after the alleged tampering. On others, Talamo alleges that Lapworth revised the levels or cause of death that Talamo had recorded, effectively concealing poor dialysis service. Talamo also claims that the Corporate Defendants gave the Individual Defendants and other nurses bonuses to meet or exceed the 1.70 Kt/V adequacy threshold, regardless of the patient's actual data and condition, so as to inflate their performance score for purposes of Medicare reimbursement.[10] Such conduct, Talamo asserts, amounted to a conspiracy among Defendants to defraud Medicare and other governmental healthcare agencies to pay for greater amounts of dialysate solution than was medically necessary and that would otherwise not be covered due to Corporate Defendants' poor performance score.[11]

Talamo claims that she reported the fraudulent activity to the Individual Defendants but was continually rebuffed by them.[12] Further, Talamo says Defendants retaliated against her. In January 2017, Individual Defendants called several meetings with Talamo and other employees, during which Talamo was accused of being unhelpful and uncooperative. Talamo alleges that Lapworth and Clark threatened another employee with the loss of her job if she did not act aggressively towards Talamo at these meetings. Talamo also alleges that Lapworth and Clark issued two "corrective action forms" that falsely accused her of wrongdoing. Thereafter, in mid-

---

[10] R. Doc. 33 at 12-17.
[11] *See id.* at 12-13.
[12] *Id.* at 13, 18.

February 2017, Talamo sent written complaints to the Louisiana State Board of Nursing and the Louisiana Department of Health and Hospitals. In March 2017, Corporate Defendants reassigned Talamo from their facility in Metairie to a facility on the West Bank. As a result, Talamo claims she was demoted and burdened by the commute.[13]

Talamo alleges that on or about June 8, 2017, she spoke with an officer from the U.S. Inspector General's Office about the content of her complaint to the Louisiana Department of Health and Hospitals.[14] During the summer of 2017, Defendants issued three additional corrective action forms against Talamo, which she claims contain false allegations, and Talamo's supervisors texted her after hours to schedule meetings that pulled her away from her normal duties and inconvenienced her commute. Further, Defendants allegedly delayed in paying Talamo mileage reimbursement and refused to pay for her travel time. Talamo further alleges that Defendants' acts of retaliation caused her to take an emergency, unpaid leave of absence in August 2017, and that Defendants wrongly terminated her benefits in December 2017. Finally, Talamo alleges that Defendants' actions caused her mental anguish and anxiety for which she has sought medical treatment.[15]

In her second supplemental and amending complaint, Talamo brings six counts against Defendants. First, Talamo alleges that Defendants knowingly presented or caused to be presented false or fraudulent claims for payment to officials of the United States Government ("Government") in violation of 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act ("Count I").[16] Second, Talamo seeks multiple damages and a civil penalty for each violation of the False Claims Act for Defendants having knowingly conspired to defraud the Government by billing Government

---

[13] *Id.* at 18-19.
[14] *Id.* at 20.
[15] *Id.* at 20-21.
[16] *Id.* at 21.

5

healthcare programs for medically unnecessary services and equipment and by causing or getting false or fraudulent claims allowed or paid, in violation of 31 U.S.C. § 3729(a)(1)(C) ("Count II").[17] Third, Talamo seeks multiple damages and a civil penalty for each violation of the False Claims Act for Defendants having knowingly made, used, or caused to be made or used false records or statements material to an obligation to pay or transmit money or property to the Government, or having knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. § 3729(a)(1)(G) ("Count III").[18] Fourth, Talamo alleges that the Corporate Defendants conspired to retaliate against her in violation of 31 U.S.C. § 3730(h)(2) and 42 U.S.C. § 1981a(b)(1) ("Count IV").[19] Fifth, Talamo alleges that Defendants, having known of Individual Defendants' conduct towards her, conspired to retaliate against her in violation of La. R.S. 23:967 ("Count V").[20] Sixth, Talamo asserts that Defendants intentionally inflicted emotional distress upon and defamed her under Louisiana tort law, and are solidarily liable for having conspired under Louisiana Civil Code article 2324(A), as well as vicariously liable for their employees' tortious actions ("Count VI"). In support of her defamation claim, Talamo alleges that the issuance of corrective action forms constituted defamatory publication.[21]

## II. PENDING MOTION

In their motion for partial judgment on the pleadings, Defendants argue that all of Talamo's claims that rely upon allegations of conspiracy (Counts II, IV, V, and VI) should be dismissed because, *inter alia*, Talamo does not identify any agreement among Defendants as required by

---

[17] *Id.* at 21-22.
[18] *Id.* at 22-23.
[19] *Id.* at 23.
[20] *Id.* at 23-25.
[21] *Id.* at 25-27.

federal[22] and state law.[23] Defendants further submit that Talamo's claim for a conspiracy under the False Claims Act (Count II and the conspiracy component of Count IV) fails because corporate affiliates – namely, the Corporate Defendants, among themselves or with their employees, the Individual Defendants – are incapable of conspiring under federal law's intra-corporate conspiracy doctrine.[24] Additionally, Defendants argue that Count III, which asserts violation of the False Claims Act's reverse false claims provision, cannot stand because Talamo does not identify any defendant's obligation to pay the Government money, which obligation existed at the time of the alleged false statement.[25] Defendants further contend that Talamo's claim against the Individual Defendants for retaliation in Counts IV and V must be dismissed because the proper defendant for such a claim is her employer, and the Individual Defendants are merely employees. Finally,

---

[22] R. Doc. 56-1 at 6-10 (citing, *inter alia*, *U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010) (dismissing False Claims Act conspiracy claim that failed to identify an unlawful agreement among co-conspirators and the overt acts allegedly taken in furtherance of conspiracy); *Wagemann v. Doctor's Hosp. of Slidell*, 2010 WL 3168087, at *6 (E.D. La. Aug. 6, 2010) (dismissing False Claims Act claim for failure to meet Rule 9(b)'s particularity requirement as to the existence of an agreement between defendants and at least one overt act)).

[23] *Id.* at 11-13 (citing, *inter alia*, *CheckPoint Fluid Sys. Int'l, Ltd. v. Guccione*, 2011 WL 3268386, at *12 (E.D. La. July 28, 2011) ("A conclusory allegation that [parties] 'conspired' is not an actionable claim under Louisiana law[,]" especially where a plaintiff "make[s] no allegations that [the defendants] entered into an agreement to commit an identifiable tort.")).

[24] *Id.* at 10-11 (citing, *inter alia*, *U.S. ex rel. Ligai v. ETS-Lindgren, Inc.*, 2014 WL 4649885, at *15 (S.D. Tex. Sept. 16, 2014) ("As a matter of law, a parent corporation cannot conspire with its own subsidiary."); *U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375, at *6 (S.D. Miss. Mar. 30, 2013) ("Because a conspiracy requires an agreement between two or more persons, the intra-corporate conspiracy doctrine provides that a corporation cannot conspire with itself. … A corporation is, therefore, incapable of conspiring with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.") (quotations and citations omitted)).

[25] *Id.* at 16-19 (citing, *inter alia*, *U.S. ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 390 (5th Cir. 2008) ("In a reverse False Claims Act suit, there is no improper payment by the government to a defendant, but rather there is an improper reduction in the defendant's liability to the government."); *U.S. ex rel. Porter v. HCA Health Servs. of OK, Inc.*, 2011 WL 4590791, at *7-8 (N.D. Tex. Sept. 30, 2011) (rejecting reverse false claim count where defendants allegedly received undue Medicare reimbursement as redundant of direct false claim count); *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 811-12 (E.D. La. 2009) (reverse false claims provision "does not extend to potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed") (quoting. *Marcy*, 520 F.3d at 391)).

Defendants submit that Talamo's defamation claim must be dismissed because it relies solely upon a communication made between employees, which is not defamatory under Louisiana law.[26]

Talamo concedes that she has not pleaded a reverse false claim under the False Claims Act in Count III, that she has not pleaded a claim against the Individual Defendants for retaliation in Counts IV and V, and that she has not sufficiently pleaded a conspiracy under the False Claims Act in Counts II and IV.[27] However, Talamo argues that the damages claimed in Count II do not rely upon a finding of conspiracy, for Count II was "merely an inartful extension of Count I," which omitted a specific request for damages under the False Claims Act.[28] Talamo further submits that while the conspiracy allegations as to Defendants in Counts IV, V, and VI are insufficient under Louisiana law, the Court should not dismiss these counts in their entirety because she has adequately pleaded that Defendants individually retaliated against her.[29] Simultaneously, Talamo insists that she has, in fact, adequately pleaded a conspiracy under Louisiana law as to the Individual Defendants in Count VI to make them solidarily liable, because Clark and Landrieu were aware of and condoned Lapworth's conduct towards her.[30] Finally, Talamo acknowledges the inadequacy of her defamation claim and seeks leave to amend to add allegations of defamatory statements to third parties including Defendants' statements to investigators from the Louisiana State Board for Nursing and the Louisiana Department of Health and Hospitals that Talamo's complaints to those state agencies were false.[31]

---

[26] *Id.* at 19-23 (citing, *inter alia*, *Danna v. Ritz-Carlton Hotel Co.*, 213 So. 3d 26, 34 (La. App. 2016) ("Intracorporate statements are not considered published to satisfy the publication requirement of defamation.") (quoting *Brunet v. Fullmer*, 777 So. 2d 1240, 1242 (La. App. 2001)).
[27] R. Doc. 57 at 2.
[28] *Id.* at 2-3.
[29] *Id.* at 4.
[30] *Id.* at 4-5.
[31] *Id.* at 6.

In reply, Defendants acknowledge that dismissing Talamo's conspiracy claims will not result in the dismissal of the entirety of Counts IV, V, and VI, which properly allege certain theories of direct liability.[32] However, Defendants maintain that Count II, expressly captioned a False Claims Act conspiracy claim, should be dismissed and suggest that the remedy paragraph from Count II be merged into Count I.[33] Next, Defendants submit that Talamo's allegation of conspiracy in Count VI as to the Individual Defendants still fails because she does not identify an agreement, which is a required element of a conspiracy claim under Louisiana law.[34] Finally, Defendants urge that Talamo should not be granted leave to amend her defamation claim because the proposed amendment comes too late and would be futile. While Talamo had knowledge of the Defendants' statements to the Louisiana agencies in early 2017, she did not include them in her first three complaints. Furthermore, such amendment would be futile because Talamo fails to identify any specific defamatory statements and the claim is time-barred, and, in any event, Defendants assert that they are protected by a qualified privilege for statements made to investigators of regulatory complaints.[35]

### III. LAW & ANALYSIS

#### A. Judgment on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for a judgment on the pleadings. "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on 'the substance of the pleadings and any judicially noted facts.'" *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018) (quoting *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)). Courts will consider an amended

---

[32] R. Doc. 62 at 2.
[33] *Id.*
[34] *Id.* at 2-3.
[35] *Id.* at 3-5.

9

complaint when it supersedes earlier pleadings. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015). "An adequate pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Linicomn*, 902 F.3d at 533 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Analysis**

The parties agree that certain claims should be dismissed, including all conspiracy claims against the Corporate Defendants alleged in Counts II, IV, V, and VI, the reverse false claim as alleged in Count III, and any retaliation claim against the Individual Defendants alleged in Counts IV and V. As a result, they are hereby dismissed. The Court now turns to the issues that remain in dispute.

### 1. Conspiracy under the False Claims Act (Count II)

Count II seeks relief under the False Claims Act conspiracy provision, 31 U.S.C. § 3729(a)(1)(C), which makes "any person who … conspires to commit a violation of [the False Claims Act] … liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 … plus 3 times the amount of damages which the Government sustains because of the act of that person." Because Talamo has admitted the insufficiency of her allegations of conspiracy under the False Claims Act, Count II must be dismissed with prejudice. Talamo omitted any request for relief, including damages, from her pleading of Count I (which addresses making a false statement in violation of 31 U.S.C. § 3729(a)(1)(A)). However, the False Claims Act provides the same penalty and damages for making a false statement as it does for conspiring to make a false statement, which is the subject of Count II wherein Talamo did plead a remedy. *See id.* § 3729(a)(1). Therefore, as Defendants observe, this pleading deficiency may be and is hereby cured by merging the remedy paragraph of Count II into Count I.

## 2. Conspiracy under Louisiana Law (Count VI)

Under Louisiana Civil Code article 2324(A), "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." To prove a civil conspiracy under Louisiana law, a plaintiff must show "that an agreement existed to commit an illegal or tortious act; that the act was actually committed and resulted in plaintiff's injury; and that there was an agreement as to the intended outcome or result." *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 2010). Thus, "a plaintiff is required to provide evidence of the requisite agreement between the parties; that is, a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Quality Envt'l Processes, Inc. v. IP Petroleum Co.*, 219 So. 3d 349, 370 (La. App. 2017) (citing *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 151 So. 3d 670, 677 (La. App. 2014)). Such evidence may be the "actual knowledge of both parties or overt actions with another, or can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." *Marks v. Motor City*, 265 So. 3d 86, 92 (La. App. 2019) (quoting *Curole v. Delcambre*, 224 So. 3d 1074, 1082 (La. App. 2017)). Conspiracy is not itself an actionable tort in Louisiana. Rather, proving a conspiracy establishes solidary liability among the co-conspirators for the underlying tort. *Quality Envt'l Processes, Inc.*, 219 So. 3d at 370.

Count VI alleges that "[t]he defendants had a meeting of the minds and colluded with each other to carry out" the tort of intentional infliction of emotional distress against Talamo.[36] Thus, Talamo's conspiracy charge includes ***all*** Defendants, both Corporate and Individual. To prove

---

[36] R. Doc. 33 at 27. Talamo also charges a conspiracy to defame her, but later in this Order & Reasons, the Court dismisses her defamation claim. As a consequence, defamation cannot be the basis for any conspiracy charge. In addition, while Talamo contends that the Individual Defendants lied to state agencies about the veracity of her written complaints, there is no explicit allegation that the Individual Defendants agreed to lie to the state agencies, nor an allegation that each Individual Defendant knew that the others were making improper statements. Thus, Talamo fails to allege that an agreement existed between the Individual Defendants to defame her, which omission is fatal to a conspiracy claim.

intentional infliction of emotional distress in Louisiana, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In the employment context, a cause of action for intentional infliction of emotional distress "has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* (citing *Maggio v. St. Francis Med. Ctr.*, 391 So. 2d 948 (La. App. 1980)).

There are no facts alleged by Talamo to show a plausible agreement between any of the Individual Defendants and Corporate Defendants to commit the acts said to inflict emotional distress. Thus, any claim against all Defendants for conspiring to commit this tort must fail. *See Guccione*, 2011 WL 3268386, at *12 (dismissing conclusory allegation of conspiracy where no other allegation showed defendants "entered into an agreement to commit identifiable intentional tort"). Nonetheless, Talamo argues that she has adequately pleaded a conspiracy between the Individual Defendants. But, at most, Talamo alleges that Lapworth and Clark colluded, either by evidence of actual knowledge or by inference of each other's knowledge of the impropriety of her co-conspirator's actions, to issue false corrective action forms, and to force Talamo to attend a series of abusive meetings.[37] This is enough to state a plausible claim against Lapworth and Clark to have conspired to intentionally inflict emotional distress upon Talamo. But Talamo makes no mention of Landrieu's knowledge of these meetings or any way in which Landrieu directly affected the conditions of her employment. While Talamo states a claim for conspiracy between Lapworth and Clark in Count VI, she fails to do so as between all three Individual Defendants.

---

[37] *Id.* at 18.

13

Count VI also presents a theory of vicarious liability.[38] Under Louisiana Civil Code article 2320, employers "are answerable for the damage occasioned by their [employees], in the exercise of the functions in which they are employed" when the employer "might have prevented the act which caused the damage, and have not done it." Thus, to the extent Lapworth and Clark acted tortiously or conspired to act tortiously in the scope of their employment, any Corporate Defendant established to be their employer may be vicariously liable.

In sum, Talamo's claim for conspiracy as between all Defendants and all Individual Defendants in Count VI is dismissed; but her claim for a conspiracy between Lapworth and Clark to intentionally inflict emotional distress is not.

### 3. Defamation under Louisiana Law (Count VI)

To establish a cause of action for defamation in Louisiana, a plaintiff must show: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Lusich v. Capital One, ACP, LLC*, 198 So. 3d 1272, 1276 (La. App. 2016) (citing *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004)). Moreover, to adequately allege a defamation claim, the plaintiff "must set forth in the [complaint] with reasonable specificity the defamatory statements allegedly published by the defendant." *Id.* (quoting *Fitzgerald v. Tucker*, 737 So. 2d 706, 713 (La. 1999)). "It is not necessary for a plaintiff to state verbatim the words on which he bases his cause of action, but he must allege a state of facts or condition of things which would show fault under article 2315." *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So. 2d 1211, 1218 (La. 2006).

Confessing the current inadequacy in the pleading of her defamation claim, Talamo argues that she should be allowed to amend the defamatory statements alleged in Count VI to include the

---

[38] *Id.* at 25.

14

assertion that "the defendants falsely told the investigators from the Louisiana State Board for Nursing and the Louisiana Department of Health and Hospitals that Mrs. Talamo's allegations against the defendants were false."[39] Under Rule 15(a) of the Federal Rules of Civil Procedure, a court has discretion to grant leave to amend "where justice so requires." Generally,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). A proposed amendment would be futile where it fails to state a claim upon which relief could be granted. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016).

Here, Defendants submit that Talamo's proposed amendment comes too late: she does not explain why she has not previously asserted these statements as the basis for her defamation claims in any of her past three complaints. The Court agrees that granting Talamo leave to amend her complaint at this late juncture (two months before trial) would unfairly prejudice Defendants where Talamo has provided no explanation for her undue delay and repeated failure to cure the pleading deficiency in her amended complaints.

Additionally, Defendants contend that Talamo's amendment, if sought, would be futile. A defamation claim has a one-year prescriptive period that runs from the date of the publication of the allegedly defamatory remark. The doctrine of *contra non valentum* may apply to interrupt prescription in some exceptional circumstances. *Alexander v. Times-Picayune L.L.C.*, 221 So. 3d 198, 203 (La. App. 2017). Defendants argue that Talamo's amendment would be futile because

---
[39] R. Doc. 57 at 6.

her defamation claim seems to have prescribed, noting that the allegedly defamatory statements she seeks now to plead were made in the spring of 2017 and that Talamo first referenced these statements over a year later, on September 4, 2018, when she filed her opposition to the instant motion. Talamo makes no effort to show that the doctrine of *contra non valentum* interrupts the prescription of Talamo's defamation claim, and therefore any amendment of her claim would be futile.

Defendants next argue that Talamo's amendment is futile because it is not sufficiently specific. In her opposition, Talamo asserts in conclusory fashion that the Individual Defendants informed the Louisiana health agencies that Talamo's complaints were false, without making any effort to plead the specifics of the supposedly false statement. Talamo's claim is not sufficiently specific because she does nothing more than make a general accusation that the Individual Defendants lied to the Louisiana health agencies. *See Lusich*, 198 So. 3d at 1276 (general allegations of "false and defamatory statements" that "implied … petitioner was a thief" were insufficient to state defamation claim); *Williams v. Nexstar Broadcasting, Inc.*, 96 So. 3d 1195, 1200-01 (La. App. 2012) (allegation that news reports "state[d] and impl[ied] that [plaintiff] had acted illegally, unprofessionally or incompetently" was conclusory). For this additional reason, amendment of Talamo's defamation claim would be futile, and thus her claim cannot withstand a motion for judgment on the pleadings.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for judgment on the pleadings (R. Doc. 56) is GRANTED in part. Count II is dismissed with prejudice, except that the remedy paragraph from Count II is merged into Count I; Count III is dismissed with prejudice; the retaliation claims

asserted in Counts IV and V are dismissed with prejudice as to the Individual Defendants; all of Talamo's conspiracy allegations in Counts IV, V, and VI are dismissed with prejudice, except for the claim that Melissa Lapworth and Heather Clark conspired to intentionally inflict emotional distress; and Talamo's defamation claim in Count VI is dismissed with prejudice.

New Orleans, Louisiana, this 29th day of May, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE